# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KELLY ANN ANGER HART,

      Plaintiff,

v.                                                                                                       Civil Action No.:5:16-CV-32
                                                                                                       (JUDGE STAMP)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On March 15, 2016, the Plaintiff, Kelly Ann Anger Hart, by counsel, Brian D. Bailey, Esq., filed a complaint in this court to obtain judicial review of the final decision of Defendant Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. ECF No. 1.

The Plaintiff also filed a motion to proceed *in forma pauperis* that this court recommended be denied on March 16, 2016. ECF No. 3. The Plaintiff paid the filing fee on March 18, 2016, and her motion to proceed *in forma pauperis* was denied as moot. ECF Nos. 4 & 6. The Commissioner filed her answer on May 20, 2016. ECF No. 8. The Plaintiff filed a Motion for Summary Judgment on June 16, 2016. ECF No. 11. The Commissioner filed a Motion for Summary Judgment on July 14, 2016. ECF No. 13.

For the reasons discussed below, the court recommends that the Plaintiff's [ECF No. 11] Motion for Summary Judgement be **DENIED** and the Commissioner's [ECF No. 13] Motion for Summary Judgement be **GRANTED**.

## II. FACTS

The Plaintiff initially applied for DIB benefits in September 2012 alleging a disability which began on December 4, 2011. R. 12. The Plaintiff's claim was denied at the initial and reconsideration levels on February 22, 2013 and May 21, 2013, respectively. R. 12. Thereafter, the Plaintiff filed a written request for a hearing on June 4, 2013. R. 12. The hearing was held on November 7, 2014, in Morgantown, West Virginia. R. 12 The Plaintiff, represented by counsel, testified at the hearing as did Vocational Expert ("VE") Larry Ostrowski, Ph. D. R. 12. On November 17, 2014, the Administrative Law Judge ("ALJ") issued an unfavorable decision to the Plaintiff. R. 9. On January 17, 2016, the Appeals Counsel denied the Plaintiff's request for review. R. 1. The Plaintiff then timely brought her claim before this court.

## III. ALJ's FINDINGS

In determining whether the Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity. §§ 404.1520(b); 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. §§ 404.1520(c); 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). §§ 404.1520(d); 416.920(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet

or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of her impairments. §§ 404.1520(e); 416.920(e).

After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of her past relevant work. §§ 404.1520(f); 416.920(f). If the claimant does not have the RFC to do her past relevant work, then she has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g); 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983).

Here, as a preliminary matter, the ALJ determined that the Plaintiff met the insured status requirements set forth in the Social Security Act through December 31, 2016. R. 14. At step one of the sequential process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 4, 2011, the alleged onset date of her disability. R. 14. At step two, the ALJ found that the Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine, status post L4-L5 laminectomy. R. 14. At the third step, the ALJ found that none of the Plaintiff's impairments met or medically equaled the severity of any of the impairments contained in the Listings. R. 15. The ALJ then determined that the Plaintiff had the following RFC:

> [T]o perform a range of light work as defined in 20 C.F.R. 404.1567(b) except: limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing or ramps or stairs; should never climb ladders, ropes or scaffolds; and, should avoid even occasional exposure to unprotected heights and concentrated exposure to extreme cold.

R. 16. At step four, the ALJ found that the Plaintiff's past relevant work as a fast food worker does not require the performance of work-related activities precluded by her RFC therefore, she is capable of performing her past relevant work. R. 23. Thus, the ALJ found that the Plaintiff was not disabled. R. 26.

## IV. MOTIONS FOR SUMMARY JUDGMENT

**A.     Legal Standards**

    1.     Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

    2.     Judicial Review

This court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable

amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). In reviewing the case to determine whether substantial evidence exists, this court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Id.* (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

**B.    Discussion**

The Plaintiff advances four assignments of error. First, the ALJ failed to address evidence that contradicts her conclusions. Second, the ALJ improperly evaluated the evidence from two physicians. It is difficult to follow the Plaintiff's third assignment of error which is an assortment of challenges to the ALJ's decision. Fourth, the ALJ improperly concluded that the Plaintiff

performed light-level work in the past. The court is unpersuaded by these arguments.

        1.        <u>The ALJ Did Not Erroneously Fail to Address Contradictory Evidence</u>

The Plaintiff argues that the ALJ erred by failing to address evidence that contradicts the ALJ's conclusion. ECF No. 12 at 5. First, the Plaintiff argues that the ALJ improperly failed to address evidence from her physician. Second, the Plaintiff argues that the ALJ relied on testimony from the Plaintiff in finding that she did not have the ability to ambulate effectively, yet the ALJ ignored testimony from the Plaintiff that she could not ambulate effectively. *Id*. at 6. The court is unpersuaded by these arguments.

        *a.*        *Physician Notes*

The Plaintiff argues that treatment notes from Dr. Chua contradict the ALJ's conclusion thus, the ALJ erred by failing to address this evidence. ECF No. 12 at 6. However, "the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." *Smith v. Colvin*, No. 12-1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015) (citations omitted).

The court cannot agree with the Plaintiff that the ALJ failed to consider relevant medical evidence. Indeed, the ALJ's decision extensively cites the medical evidence of record. Thus, the court finds that the ALJ's decision is supported by substantial evidence and any alleged failure to explicitly comment on the all medical evidence is inconsequential.

In fact, the ALJ extensively considered the evidence from Dr. Chua and expressly rejected it. The ALJ stated that:

> The records reflect a gap in treatment by the claimant with Dr. Chua from November 23, 2011, to February 14, 2013. On February 14, 2013, the claimant returned to Dr. Chua, not for the purpose of seeking treatment, but rather seeking a disability exam (Exs. 14F/5 and 16F/59). The claimant alleged muscle weakness in her lower

extremities and presented using a four-pronged cane; however, the claimant was not evidenced to have required an assistive device throughout treatment with Dr. Douglas, including during a visit the prior month, nor during the subsequent visit thereafter (Ex. 13F/5-7 and 15F). The undersigned finds the context of the claimant's February 2013 visit to Dr. Chua tends to undermine the persuasiveness of her appearance with a cane. Even at hearing, the claimant testified that she had really only started using a cane within the last six months (i.e., April-May 2014). Moreover, when the claimant presented for a regular treatment visit in May 2013, although described to have an antalgic gait, she was no longer using a cane (Ex. l6F/18). Objectively, no deformities, edema, varicosities, or sensory or reflex deficits were evidenced (Ex. 16F/19). In fact, throughout the remaining period at issue, Dr. Chua advised no regular and recurring objective abnormalities within treatment records (Exs. l6F/8-13, 15-17, 61-63; and 19F/l-5, 8-13). A transient muscle spasm in the upper back was noted in June 2013, but not evidenced thereafter. Non-quantifiable finding of poor reflexes was noted in July 2013, but not evidenced thereafter. No abnormalities were evidenced in October 2013, January 2014, and May 2014. Rather, range of motion was normal, strength was normal, stability in all extremities was evidenced, no pain in the extremities was noted on inspection, pulses were normal, and no edema as demonstrated. Limitations of functioning were not indicated (*Id*.). Rather, the claimant was instructed to increase aerobic and weight training activities and to exercise regularly.

The last documented visit with Dr. Chua occurred in August 2014 (Ex. 19F/8-13). This treatment record was riddled with inconsistences and largely unpersuasive. For example, Dr. Chua advised a new impairment of myotonic dystrophy; however, she documented no corresponding clinical objective abnormalities, including for example, no muscle wasting. Such a condition is hereditary in nature; yet, Dr. Chua had no objective diagnostic support for any such finding. Moreover, Dr. Chua had referred the claimant for neurological consult with regard to any such impairment and neurologist Christopher Nance, M.D., had evaluated the claimant one week earlier and found no evidence of myotonic disorder (Ex. 19F/21-27). Such evidence further tends to undermine the persuasiveness of Dr. Chua's assertion that the claimant presented with a neurologic gait that day. Dr. Nance documented a normal gait, normal coordination, intact sensory function, normal muscle tone, normal motor strength and function, and normal reflexes. Moreover, Dr. Chua, despite alleging drastic findings unsupported by objective evidence, and despite making reference to the claimant's asse1tion of having falls, did not find the claimant to be at risk for falls and did not find fall precautions necessary (Ex. 19F/ll). Such aforementioned factors along with what has previously been articulated tend to undermine the veracity of Dr. Chua's assessments.

R. 20-21. Therefore, this court finds that the ALJ did not improperly ignore evidence from the

Plaintiff's physician.

### b. *Plaintiff's Testimony*

The Plaintiff argues that the ALJ relied on portions of the Plaintiff's testimony to support her conclusion that the Plaintiff could ambulate effectively, however, the ALJ ignored other portions of the Plaintiff's testimony. The Plaintiff's argument relies on *Diaz v. Charter*, 55 F. 3d 300, 307 (7th Cir. 1995). In *Diaz*, the plaintiff argued that the ALJ selectively excluded evidence concerning the plaintiff's ability to sit, stand, and walk. *Id*. The plaintiff's physician's report noted that the plaintiff could only sit for about fifteen minutes. *Id*. The ALJ stated that this physician's opinion was given greater weight than any other report in the record. *Id*. Nonetheless, the ALJ found that the plaintiff could perform sedentary jobs which required the plaintiff to sit for six hours per day. *Id*. The court stated that, "an ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Id*. However, the court held that the ALJ did articulate his analysis. The court explained that "[t]he ALJ could consider this portion of the report less significant than the doctor's other findings, and we shall not reweigh the evidence on appeal." *Id*. The court further explained that the ALJ is not required to consider every piece of evidence. *Id*.

Here, the Plaintiff argues that the ALJ supported her conclusion that the Plaintiff could ambulate effectively by citing testimony from the Plaintiff such as that she is able to walk in a field. R. 18. The Plaintiff cites extensive examples from her testimony that support her argument that she cannot ambulate effectively. ECF No. 12 at 7. However, [t]he ALJ could consider this portion of the [testimony] less significant than [other portions], and we shall not reweigh the evidence on appeal." *Diaz*, 55 F. 3d at 307. Moreover, the ALJ here extensively analyzed conflicting evidence.

For example, the ALJ stated that:

> On September 26, 2012, it was contended that the claimant was limited to walking one-eighth of one mile at one time, required the use of a cane, had no ability to lift or squat, and was not able to lift, carry or stand for "any time." It is not lost on the undersigned, however, that September 26, 2012 is also the date of the claimant's laminectomy, thereby reasonably undermining the persuasiveness of any alleged limitations with regard to any period of 12 consecutive months.

R. 17. The ALJ further discussed that the Plaintiff:

> [M]aintained she required a cane for ambulation and could not walk on a road for exercise; yet, she could walk in a field daily. She contended she was limited to lifting five pounds, yet she averred she lifted 10 pounds in weight regularly (i.e. lifting two one-half gallon jugs filled with water in each hand). She maintained she could bend and stoop, but denied an ability to squat. She could sit through a one-hour television program. She had looked for work but had not applied. She had attended no physical therapy in over one year. She was independent in personal care. She drove, ate out at times, and shopped in stores. She used a computer, playing games and going online. She used a cell phone and kept track of walking with a Fit Bit. She watched television, listened to music, read, knitted/crocheted. She raked leaves, for short times period, and pulled weeds. She performed household chores such as washing dishes, sweeping, dusting, and folding clothes.

R. 18. The ALJ concluded that:

> As discussed above, the claimant remained engaged in various activities. Even granting that she may perform some of these activities slowly, with difficulty, with rest breaks, occasionally, and/or with the assistance of other people at times, her activities were inconsistent with the severity of impairment alleged and her testimony and reports with regard to alleged limitations in functional abilities was inconsistent and unpersuasive.

R. 21.

Here, "[b]ecause we can track the ALJ's reasoning and be assured that the ALJ considered the important evidence, [this court finds] that the ALJ has met the minimal articulation standard." *Diaz*, 55 F. 3d at 308. Therefore, this court is unpersuaded by the Plaintiff's argument.

### 2. The ALJ Properly Evaluated the Evidence From Dr. Chua and Dr. Douglas

The Plaintiff argues that the ALJ improperly evaluated the evidence from Dr. Chua and Dr. Douglas. The Plaintiff advances five arguments. First, The ALJ improperly found that Dr. Chua's conclusion regarding whether the Plaintiff met the Listings was reserved for the Commissioner. Second, the ALJ improperly speculated that the Plaintiff self-imposed her five-pound lifting limitation. Third, there is no evidence that the Plaintiff was lying to her physicians for monetary gain. Fourth, the ALJ indicated that Dr. Chua's treatment notes are inconsistent but failed to specify which notes are inconsistent. Fifth, the ALJ did not explain what "myotonic disorder" is or why that was a reason to discount Dr. Chua's opinion. The court is unpersuaded by these arguments.

    *a.    The ALJ Properly Found that Dr. Chua's Conclusion Regarding Whether the Plaintiff Equaled a Listing was Reserved for the Commissioner*

The Plaintiff argues that the ALJ improperly rejected Dr. Chua's opinion that the Plaintiff equaled a Listing *only* because this is a determination reserved for the commissioner. Indeed, the ALJ stated that:

> [C]laimant's family practitioner Catherine Chua, D.O. [stated] that she felt the claimant met and exceeded listing *l.04C* (Ex. 18F and/or 19F/15). This statement is accorded little weight as this is not a medical opinion but is an administrative finding dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein, and therefore reserved to the Commissioner.

R. 16. Social Security Ruling ("SSR") 96-5p 1996 WL 374183 (July 2, 1996), explains that "the issue of meeting the requirements of a listing is still an issue ultimately reserved to the Commissioner." Therefore, the ALJ correctly applied the law by reserving this determination for the commissioner. Moreover, this was not the only reason that the ALJ gave for discrediting Dr. Chua's opinion. As discussed in Part 1, Subpart a of this section, the ALJ gave extensive reasons for discrediting Dr. Chua's opinion. Therefore, the ALJ properly applied the law and the ALJ's

decision is supported by substantial evidence.

> b. *There is Substantial Evidence that the Plaintiff Could Lift More than Five Pounds*

The Plaintiff argues that the ALJ improperly concluded that the Plaintiff could lift more than five pounds. ECF No. 12 at 10. Specifically, the Plaintiff alleges that the ALJ speculated by finding that her five-pound weight restriction imposed by her doctors was based on the Plaintiff's statements and not on medical evidence. The ALJ stated that:

> Dr. Chua maintained the claimant was limited to lifting five pounds. . . . This statement is accorded less than great weight. As previously found, it appears that the claimant's subjective statements were blindly accepted as true and heavily relied upon, there is no objective support, including within Dr. Chua's internal treatment records, of impairment or symptomatology of such a debilitating degree.

R. 22.

As discussed above, the ALJ extensively explained her reasoning for according Dr. Chua's opinion little weight. Furthermore, Dr. Douglas' report states that, "We will keep her on her 5-pound weight restriction" thus, a reasonable mind could conclude that Dr. Douglas merely reimposed the five-pound limit prescribed by Dr. Chua. R. 526.

In addition, the ALJ accorded great weight to the opinions of the State agency medical consultants who provided physical RFC assessments. R. 21. The RFCs developed by the State agency medical consultants did not include a five-pound limitation. Moreover, the Plaintiff testified that she regularly lifted two half-gallon jugs filled with water therefore, there is substantial evidence that the Plaintiff could lift more than five pounds. R. 22, 71.

> c. *There is Substantial Evidence to Support the Weight Accorded to the Evidence from Dr. Chua and Dr. Douglas*

The Plaintiff argues that the ALJ discredited the opinions of Dr. Chua and Dr. Douglas in

part because of the ALJ's unsupported belief the Plaintiff was lying to Dr. Chua and Dr. Douglas. ECF No. 12 at 10. This court is unpersuaded by this argument.

Nowhere in the record does the ALJ state that the Plaintiff was lying. Rather, the ALJ discusses that the Plaintiff's statements to Dr. Chua appeared "not supported by objective evidence but appears to be based primarily upon the claimant's subjective statements offered while seeking to obtain secondary and contingent financial-related disability benefits." R. 22. Here, as discussed above, the ALJ provided a detailed analysis of conflicting evidence and the weight accorded to that evidence. For example the ALJ stated that:

> On January 3, 2013, approximately three months status post laminectomy, the claimant had minimal complaints for Dr. Douglas (Ex. 13F/5-7). Any lower back stiffness was mild, with no objective erythema or swelling demonstrated. Any lumbar pain was intermittent and "very tolerable." Ankle pain was minimal as well. The claimant averred she was "very pleased." Diagnostically, stability was evidenced along with good positioning. A lumbar-sacral orthosis (LSO) brace that the claimant used after surgery was no longer needed, with Dr. Douglas advising its discontinuance. Physical therapy was recommended. In July 2013, the claimant presented for her last visit with Dr. Douglas (Ex. l 5F). The claimant alleged some balance issues and/or stumbling, along with some residual numbness in the left ankle/foot; however, she denied low back pain or radicular symptoms on more than an intermittent and transient basis. Again, she averred she was "very pleased" with the outcome. Clinically, neurological function was intact, motor strength was full and symmetric throughout, reflexes were intact and symmetric, sensation was intake, and no clonus demonstrated. The claimant was not participating in any physical therapy or pain management. Follow-up was not required. It is noted by the undersigned that although the claimant has largely contended pain to be of a totally disabling degree throughout the period at issue, Dr. Douglas documented no significant pain complaints, noted the claimant's lack of any pain management treatment, and consistently described the claimant as "very pleasant" (Exs. 5F, 6F, 10F-13F, and 15F).

R. 19. Moreover:

> On February 14, 2013, the claimant returned to Dr. Chua, not for the purpose of seeking treatment, but rather seeking a disability exam (Exs. 14F/5 and 16F/59). The claimant alleged muscle weakness in her lower extremities and presented using a four-pronged cane; however, the claimant was not evidenced to have required an

assistive device throughout treatment with Dr. Douglas, including during a visit the prior month, nor during the subsequent visit thereafter (Ex. 13F/5-7 and 15F). The undersigned finds the context of the claimant's February 2013 visit to Dr. Chua tends to undermine the persuasiveness of her appearance with a cane.

R. 20.

The last documented visit with Dr. Chua occurred in August 2014 (Ex. 19F/8-13). This treatment record was riddled with inconsistences and largely unpersuasive. For example, Dr. Chua advised a new impairment of myotonic dystrophy; however, she documented no corresponding clinical objective abnormalities, including for example, no muscle wasting. Such a condition is hereditary in nature; yet, Dr. Chua had no objective diagnostic support for any such finding.

R. 20. Therefore, there is substantial evidence to support the ALJ's determination.

### d. There is Substantial Evidence to Support the ALJ's Finding that Dr. Chua's Opinion and Notes were Inconsistent

The Plaintiff argues that the ALJ gave Dr. Chua's opinion less weight because the ALJ found that Dr. Chua's opinion was inconsistent with Dr. Chua's treatment notes. ECF No. 12 at 11. The Plaintiff argues that the ALJ did not explain what these inconsistencies were therefore, the ALJ erroneously discredited Dr. Chua's opinion. However, a review of the record shows that this is not the case. The ALJ explained that:

The last documented visit with Dr. Chua occurred in August 2014 (Ex. 19F/8-13). This treatment record was riddled with inconsistences and largely unpersuasive. For example, Dr. Chua advised a new impairment of myotonic dystrophy; however, she documented no corresponding clinical objective abnormalities, including for example, no muscle wasting. Such a condition is hereditary in nature; yet, Dr. Chua had no objective diagnostic support for any such finding. Moreover, Dr. Chua had referred the claimant for neurological consult with regard to any such impairment and neurologist Christopher Nance, M.D., had evaluated the claimant one week earlier and found no evidence of myotonic disorder (Ex. 19F/21-27). Such evidence further tends to undermine the persuasiveness of Dr. Chua's assertion that the claimant presented with a neurologic gait that day. Dr. Nance documented a normal gait, normal coordination, intact sensory function, normal muscle tone, normal motor strength and function, and normal reflexes. Moreover, Dr. Chua, despite alleging drastic findings unsupported by objective evidence, and despite making reference to the claimant's assertion of having falls, did not find the claimant to be at risk for falls

> and did not find fall precautions necessary (Ex. 19F/ll). Such aforementioned factors along with what has previously been articulated tend to undermine the veracity of Dr. Chua's assessments, as well as her medical source statements, which are discussed below.

R. 20. Contrary to the Plaintiff's argument, the ALJ explained the inconsistencies in Dr. Chua's opinion. Thus, this court is unpersuaded by the Plaintiff's argument.

> e. *The Weight Accorded to Dr. Chua's Opinion by the ALJ is Supported by Substantial Evidence*

The Plaintiff argues that the ALJ improperly accorded less than great weight to the statements by Dr. Chua. ECF No. 12 at 12. Specifically, the Plaintiff argues that in the ALJ's discussion on the weight accorded to Dr. Chua's opinion, and the reasons therefor, the ALJ notes that Dr. Chua referred the Plaintiff to Dr. Nance, a neurologist, in an effort to obtain whether the Plaintiff had myotonic dystrophy. *Id*. Dr. Nance found that the Plaintiff did not have myotonic dystrophy. R. 22. According to the Plaintiff, the ALJ erred because "the ALJ does not explain how myotonic disorder . . . relates to Listing 1.04(C) or the lifting and standing/walking limitations placed on [the Plaintiff]. The ALJ's use of myotonic dystrophy to discount Dr. Chua's opinion is not based on any evidence in the record." ECF No. 12 at 12. The court is unpersuaded by this argument.

The Plaintiff's argument misunderstands the ALJ's discussion. The ALJ's discussion notes several inconsistencies in Dr. Chua's opinion. The ALJ's discussion includes, *inter alia*, that Dr. Chua, a family practitioner, referred the Plaintiff to Dr. Nance, a neurologist. R. 22. Yet, one week after Dr. Nance found no objective evidence of myotonic disorder Dr. Chua advised a finding of myotonic dystrophy. R. 22. Therefore, the ALJ was highlighting an inconsistency thus, the Plaintiff's argument that the ALJ failed to discuss how a finding of no myotonic disorder relates to

Listing 1.04(C) is misplaced.

### 3. The Plaintiff's Third Argument is Unpersuasive

The Plaintiff's third argument, titled "Because the ALJ's reasons for relying on the state agency created evidence were based on reasons compatible with the Defendant's regulations" is an assortment of unpersuasive arguments. ECF No. 12 at 12.

First, the Plaintiff argues that the ALJ provided boilerplate reasons for relying on non-treating, non-examining consultants. ECF No. 12 at 12. The court is unpersuaded by this argument. Indeed, the ALJ explained her reasoning:

> First, the undersigned fully considered the opinions of the State agency medical consultants' who provided physical residual functional capacity assessments, placing the claimant at a range of light exertional work, with an ability to perform posturals occasionally, except no climbing of ladders, ropes or scaffolds, and advising protection from concentrated exposure to cold, vibration, and hazards (Exs. 2A, 4A, and 6A). Although not in lockstep agreement, given the claimant's treatment history, largely benign and/or transient clinical findings, and diagnostic stability evidenced within the record, the undersigned is in general agreement with the opinions of the State agency medical consultants' that the claimant is capable of light work and accords said opinions great weight.

R.21. The ALJ further explained that:

> Although non-examining physicians, the consultants' reviewed the case record and are experts familiar with the Regulations and evidentiary requirements. The opinions were most consistent with and supported by the objective evidence of record.

R. 21.

Second, the ALJ relied on the "claimant's treatment history, largely benign and/or transient clinical findings, and diagnostic stability evidenced within the record" to support her conclusion that the medical consultants' opinions are consistent with her findings. ECF No. 12 at 12. The Plaintiff argues "[t]he ALJ did not specifically indicate what evidence was 'benign' or 'transient' or was

'diagnostically stability.'" *Id.* However, that is not the case. Indeed the ALJ extensively discussed the Plaintiff's treatment history:

> To assess the claimant's residual functional capacity, the undersigned considered the full longitudinal medical record, and more specifically turned to the claimant's medical records during the relevant period at issue (i.e., since December 4, 2011). In general, although the claimant underwent surgical intervention for her allegedly disabling symptoms, which weighed somewhat in her favor, the record also revealed that said treatment was generally successful in improving, controlling, and/or alleviating symptomatology. In addition, treatment prior and subsequent to this singular procedure, was routine and conservative, with records failing to demonstrate objective abnormalities consistent with or supportive of the degree of impairment alleged hy the claimant. In short, the longitudinal record was inconsistent with and unsupportive of finding impairment intractable in nature and totally preclusive of any and all forms of work activity. More specifically, prior to the period at issue, in response to assertion of back pain, diagnostic testing of the lumbar spine revealed grade I to grade II anterolisthesis/spondylolisthesis at level L4-L5, with some resulting spinal stenosis and impingement; however, remaining levels were unremarkable for significant abnormality, disc height was maintained, and no acute abnormality was demonstrated (Ex. 2F). Additionally, symptomatology was suggestive of inflation due to a urinary tract infection (*Id.*). Furthermore, during said period, aside from a non-quantifiable assessment of transient decreased sensation, clinical findings, including those of family physician Catherine Chua, D.O. were without abnormality. Gait and station were normal. No misalignment, asymmetry, crepitation, defects, tenderness, effusions, range of motion deficits, instability, atrophy, strength or tone abnormality, or reflex abnormality were demonstrated (Exs. lF/5 and 4F/l-4, 7-9).

R. 18. Therefore, this court finds that the ALJ's mention of the "claimant's treatment history, largely benign and/or transient clinical findings, and diagnostic stability evidenced within the record" is a reference to the ALJ's more detailed discussion three pages earlier.

Third, the Plaintiff argues that the ALJ "ignored a treating neurologist and a treating physician in order to indicate that the reviewing personnel deserved the most weight." ECF No. 12 at 13. The Plaintiff does not indicate which neurologist and treating physician the ALJ ignored however, it seems likely that the Plaintiff is referring to Dr. Chua and Dr. Douglas because both doctors are mentioned throughout the Plaintiff's brief and the record. As explained more fully in

section 2 above, the ALJ extensively discussed the evidence from Dr. Chua and Dr. Douglas. Therefore, the ALJ did not "ignore" Dr. Chua or Dr. Douglas.

Fourth, as discussed more fully in section 2, subsection a above, the ALJ discussed that Dr. Chua's conclusion that the Plaintiff met the Listings was actually a determination reserved for the Commissioner. Therefore, the Plaintiff argues that the ALJ erred by discussing the proposed RFCs submitted by the consulting doctors without explaining that the Plaintiff's RFC is ultimately a determination for the Commissioner. ECF No. 12 at 13. The court is unpersuaded by this argument.

The regulations provide that, "[a]lthough we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter [or] your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927. Therefore, the conclusion from Dr. Chua and the RFCs proposed by the consultant doctors are appropriately considered as evidence. Here, the ALJ explained that she is not bound by Dr. Chua's conclusion and explained in detail why she found contrary to Dr. Chua's opinion. Furthermore, the ALJ properly considered the proposed RFCs as evidence and explained in detail how she determined the Plaintiff's RFC. *See* R. 16-23. Therefore, the ALJ complied with the law.

Fifth, the Plaintiff argues that her "favorable evidence was reviewed under a much stricter microscope than evidence that was not favorable to [her]." ECF No. 12 at 13. However, the Plaintiff does not cite any examples or any argument other than her conclusion. Therefore, this argument is unpersuasive.

> 4. There is Substantial Evidence to Support the ALJ's Finding that the Plaintiff Could Perform Her Past Relevant Work

The Plaintiff contends that the ALJ improperly determined that she performed light-level work in the past, therefore, the ALJ improperly determined that the Plaintiff could perform her past relevant work. ECF. No. 12 at 13-14.

The VE testified that the Plaintiff's position at a McDonald's restaurant from 1995-2002 is best described as a fast food worker according to the Dictionary of Occupational Titles ("DOT"). R. 88. The VE further explained that fast food worker is classified as light-level work. R. 89. The VE testified that the Plaintiff then became a "shift manager" which is best classified under the DOT as a fast food cook which is medium-level work. R. 89. The Plaintiff then worked as a fast food service manager which, according to the DOT, is classified as light-level work. R. 89. However, the VE explained that,

> [the Plaintiff] did not perform the full range of the job as described in the DOT as fast food services manager. Much of the requirements of that definition of that job would be done by corporate or someone above her, working for them. So I believe that, as she performed the job, it would be most accurately classified as a medium job similar to the work as a fast food cook.

R. 89. The Plaintiff then worked at a Hardee's restaurant as a fast food worker, light-level work, and as a fast food cook, medium-level work. R. 89.

The ALJ found that the Plaintiff was not disabled because she was able to perform her past relevant work as a fast food worker (light-level work) as said work is generally performed in the national economy. The Plaintiff contends that the evidence shows that she actually performed these jobs at the medium level. ECF. No. 12 at 14. Specifically, during her work as a fast food worker she frequently lifted over 20 pounds and regularly lifted 30-35 pounds. *Id*. Therefore, the Plaintiff contends that the ALJ found her capable of returning to light-level work that she never actually

-18-

performed. The court is unpersuaded by this argument.

The law is whether the claimant can perform her past relevant work as it is *typically* performed not how she *actually* performed the work. Indeed, SSR 82-61 explains that:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

Here, the ALJ stated that:

> In comparing the residual functional capacity with the demands of this type of work, the undersigned finds the claimant capable of performing her past relevant work as a fast food worker as said work is generally performed in the national economy according to the testimony of the vocational expert.

Therefore, the ALJ complied with the law by analyzing whether the Plaintiff could perform past relevant work as it is typically performed in the national economy and not as the Plaintiff actually performed it.

## V. RECOMMENDATION

Based on the foregoing, the court concludes that the ALJ's decision complied with the applicable law and regulations, and it was based on substantial evidence. Accordingly, the court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 11] Motion for Summary Judgment be **DENIED**; and
2. Commissioner's [ECF No. 13] Motion for Summary Judgment be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which

objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia

DATED: September 14, 2016                    /s/ *James E. Seibert*
                       **JAMES E. SEIBERT**
                       **U.S. MAGISTRATE JUDGE**